## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BERTHA M. HILLMAN, ET AL.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **CAUSE NO. 1:10CV229 LG-RHW** |
| | § | |
| **EMERSON P. LOGA, III, ET AL.** | § | **DEFENDANTS** |

## <u>MEMORANDUM OPINION AND ORDER GRANTING</u>
## <u>SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS</u>

BEFORE THE COURT are: 1) the Motion for Summary Judgment [76] filed by the Plaintiffs, and 2) the Motion for Summary Judgment [78] filed by the Defendants. Both seek a determination of whether the Defendants are subject to the requirements of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, *et seq.* The issues have been fully briefed. After careful consideration of the arguments and the relevant law, it is the Court's opinion that the Defendants' Motion should be granted and Plaintiffs' claims dismissed.

### BACKGROUND

The Plaintiffs are purchasers in a condominium project that was to be constructed in Henderson Point, Mississippi, by Lacote, LLC, a Mississippi Limited Liability Company. The Defendants are individuals who are the members of Lacote, LLC.

Plaintiffs allege they each executed a Purchase Agreement and paid a deposit to the Defendants in January and February 2007, for condominium units that were to be completed within two years. However, the project did not have adequate funding, and in June 2008, when it was only 35% complete, construction stopped. Lacote

obtained a $1.5 million loan from SI Realty Enterprises, Inc., which secured its loan by filing a deed of trust against the property.  SI Realty foreclosed on the property approximately six months later, on January 12, 2009.

Plaintiffs filed this lawsuit in May 2010, alleging they have no remedy under the Purchase Agreements.  The Agreements required them to subordinate their interest in the project to the initial financing from Trustmark Bank; the deposit money has been spent; Defendants' interest in the project was foreclosed upon by SI Realty; and Lacote, LLC, filed for and was discharged in bankruptcy.  Plaintiffs contend their only remaining remedy is pursuant to the ILSFDA against the Defendants as the individual members of Lacote, LLC.[1]  *See Kemp v. Peterson*, 940 F.2d 110, 113 (4th Cir. 1991); *Hester v. Hidden Valley Lakes, Inc.*, 495 F. Supp. 48, 54 (N.D. Miss. 1980).

Plaintiffs allege that Defendants induced them to enter into the Purchase Agreements by falsely representing the project was adequately funded and bonded. They allege the Defendants violated the ILSFDA in connection with the sale of condominiums units in the project, and seek return of their deposits, pre- and post-judgment interest, and attorneys' fees and costs.  The alleged violations of the ILSFDA are that the Purchase Agreements failed to contain any reference to the seven day right of rescission required under 15 U.S.C. § 1703(b), and the contractual obligation to complete the project within two years was illusory and therefore not compliant with 15 U.S.C. § 1702(a)(2).  Assuming the Purchase Agreements did not effectively exempt

[1] The Defendants do not contest that they may be held individually liable for violation of the ILSFDA.

-2-

these transactions from ILSFDA coverage, Plaintiffs also invoke the anti-fraud provision in § 1703(a)(2). Section 1709 allows a purchaser to sue the developer or his agent for a violation of § 1703(a)(2).

DISCUSSION

**THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT:**

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

The sole question presented by the parties' motions is one of law: whether the twenty-four month building provision in the Purchase Agreement was sufficient to bring Defendants within the ambit of the § 1702(a)(2) exemption from the requirements of the Act, or whether the Agreement's other provisions render that apparent obligation illusory and the sale therefore subject to the ILSFDA.

Plaintiffs argue they are entitled to summary judgment because 1) they had no available remedy under the Agreement, and 2) Defendants and Lacote failed to obtain adequate financing, a performance bond, or a payment bond, thereby making completion within 24 months impossible.  Defendants argue that summary judgment should be granted to them instead, because the Purchase Agreement contains specific language exempting the sales from the requirements of the ILSFDA, and the promise to complete within 24 months was not illusory.

THE ILSFDA'S TWO YEAR EXEMPTION:

The purpose of the ISLA is "to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property." *Law v. Royal Palm Beach Colony, Inc.,* 578 F.2d 98, 99 (5th Cir.1978); *Nickell v. Beau View of Biloxi, L.L.C.,* 636 F.3d 752, 754 (C.A.5 (Miss.),2011).  In this case Defendants contend the Act does not apply to them because of an exemption found at 15 U.S.C. § 1702(a)(2).  It provides:

> (a) Sale or lease of lots generally
> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to -
>
> . . .
>
> (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

The interpretation of the ILSFDA is governed by federal law.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991).  However, state law governs the

interpretation of the Purchase Agreement in deciding whether the obligation to complete construction is illusory.  *ACS Const. Co., Inc. of Miss. v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003); *Maguire v. So. Homes of Palm Beach, LLC*, 591 F. Supp. 2d 1263, 1267 (S.D. Fla. 2008).

> In Mississippi, an obligation or promise is illusory if the words promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all. . . . Such an illusory promise is neither enforceable against the one making it, nor is it operative as a consideration for a return promise.

*Marshall Durbin Food Corp. v. Baker*, 909 So. 2d 1267, 1275 (Miss. Ct. App. 2005) (citations omitted).  The Court has been unable to locate any case in which Mississippi's standard has been applied to the ILSFDA to determine whether the obligation to complete construction is illusory.  However, there have been a number of instances where Florida law, which appears to be very similar to Mississippi law, has been applied.  *See, e.g., Hardwick Prop., Inc. v. Newbern*, 711 So.2d 35, 38 (Fla. Ct. App. 1998).  These provide guidance in this case.

In order to qualify for the two year exemption, the contract must impose a legal duty on the developer to perform his promise to construct the condominium within two years.  *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 854 (11th Cir. 2009); *Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1271 (S.D. Fla. 2007).  "A legal duty, contractual or otherwise, is one that the law will require a party to perform, or to pay for not performing, by bringing to bear public force."  *Stein*, 586 F.3d at 855.

"The question is whether [the contract] allows 'nonperformance by the seller at the seller's discretion.'" *Atteberry v. Maumelle Co.*, 60 F.3d 415, 420 (8th Cir. 1995) (quoting 24 C.F.R. pt. 1710 app. A at IV(b), removed Apr. 26, 1996). A clause that provides for a refund of the buyer's deposit if the seller is unable to close for any reason within the seller's control is not acceptable. Suppl. Info. to Part 1710: Guidelines for Exemptions Available Under the ILSFDA, *available at* www.hud.gov/offices/hsg/ramh/ils/ilsexemp.cfm; *Aboujaoude*, 509 F. Supp. 2d at 1271. Nor is it acceptable to limit the buyer's remedy to return of monies in the event construction is not completed within two years. *See Schatz v. Jockey Club Phase III, Ltd.*, 604 F. Supp. 537, 541 (S.D. Fla. 1985) (buyer's "sole remedy" was return of deposit plus interest, action for specific performance expressly disallowed, and seller could reject buyer for any reason). Remedies may nevertheless be limited if the buyer still has an effective remedy to enforce the promise to complete within two years. *Stein*, 586 F.3d at 856.

THE PURCHASE AGREEMENTS:

There appear to be five relevant provisions in the Purchase Agreements.

First, under the heading "Down Payment," the Agreement states:

> Purchaser acknowledges his understanding that any monies deposited with Seller by him in the way of down payments, Reservation Deposits and the like will be used by Seller to assist in financing the development and production of The Village on the Beach condominium regime. To this end Purchaser further asserts his understanding and intention that all monies he may have deposited with Lacote, LLC are subordinate to any developmental bank loans that may be made by Lacote, LLC at any time during the construction of the Village on the Beach and agrees to sign any

subordination agreements as may be required by any bank with which said loan(s) is/are made.

### a. **CONVEYANCE OF UNDIVIDED INTEREST TO PURCHASER:**

As partial consideration for monies advanced to SELLER by PURCHASER via down payments and/or Reservation Deposits (all of which being considered partial payments in furtherance of this Agreement), after Seller acquires subject real property upon which the Village on the Beach condominium regime will be built, Seller will convey to Purchaser his predetermined undivided interest in the common areas in the condominium development which Purchaser will hold subject to any and all loans under which the property as a whole may be collateralized.  All parties acknowledge that, if for any reason, this Purchase Agreement should not be consummated by a Sale/Purchase closing within the time contemplated by this Agreement, Lacote, LLC will refund all monies (payments) deposited by the Purchaser wherein Purchaser will relinquish and convey their undivided interest in subject property to Seller.

Compl. Ex. "A" 2-3 (¶ 3), ECF No. 1-2.

Second, under the heading "Completion Date and Construction," the Agreement

states:

Notwithstanding any other provision of this Agreement, construction of the Unit shall be completed on or before twenty-four (24) months or less from the date of execution of this Purchase Agreement **OR** a Certificate of Occupancy has been issued by the relevant building authority, whichever is sooner, provided, however, that SELLER shall not be responsible for delays caused by circumstances recognized by Mississippi law to constitute impossibility of performance, such as war, strikes, insurrection, Acts of God, or unanticipated shortage of building materials.

*Id.* at 3 (¶ 4a).

Third, under the heading "Closing," the Agreement states:

[T]he closing date will not be before the date when SELLER obtains a certificate of occupancy for the Unit from the proper governmental agency and in no event later than twenty-four (24) months from the date of execution of this Purchase Agreement; provided, however, that SELLER shall not be responsible for delays caused by circumstances recognized by

Mississippi law to constitute impossibility of performance, such as war,
strikes, insurrection, Acts of God, or unanticipated shortage of building
materials.

*Id.* at 4 (¶ 7).

Fourth, under the heading "Liens Prior To Closing," the Agreement states:

Any mortgage or lien now or hereafter encumbering the real estate or
said Unit will be discharged or released at or prior to closing, but until
such discharge or release, PURCHASER acknowledges and agrees that
his rights hereunder and any ownership interest are subordinate to the
lien(s) of any construction loan mortgage(s) which now or shall hereafter
encumber said property prior to closing.  In addition to PURCHASER'S
rights hereunder being subordinate to the lien of SELLER'S Mortgagee,
the PURCHASER specifically subordinates any rights or claims he may
have to the any [sic] monies he may have deposited with the Purchaser
in the way of Earnest Money, Reservation Deposit or down payment
deposits to the Mortgagee if and when if [sic] said monies are used toward
the costs of construction and development as provided herein.

*Id.* at 6 (¶ 10).

Finally, under the heading "Default," the Agreement states:

If for any reason consummation of this transaction is prevented after
acceptance of this Agreement by SELLER'S default hereunder, the
PURCHASER shall be entitled to the refund of his down payment as well
as any other monies he may have advanced SELLER.  Notwithstanding
the foregoing, to the extent that any of PURCHASER'S advanced monies
has gone into construction of improvements development on the property,
PURCHASER'S claim for return of such portion of the down payment
shall be subordinate to the lien(s) of the construction lender's deed(s) of
trust and shall be the full responsibility of the SELLER to make the
appropriate refund.

*Id.* at 8 (¶ 14b).

The Plaintiffs argue that the "Down Payment" clause requiring them to
relinquish and convey their undivided interest in the common areas in the
condominium development plainly negates or waives the remedy of specific

-8-

performance, because it requires forfeiture of Plaintiffs' interest in the property in order to obtain a refund of their deposits.   Plaintiffs also argue that the clause subordinating their refund remedy to the liens of Defendants' lenders impairs the remedy to such an extent that the promise of a refund is illusory.

The Defendants counter that the "Down Payment" and "Default" provisions are standard for a condominium project and were necessary if they hoped to obtain financing for the project.   Furthermore, the Purchase Agreement "simply defines the lien position of the purchaser versus the construction lender and does not take away the purchaser's rights for specific performance or breach of contract against Lacote." Def. Resp. 9, ECF No. 83

Reviewing all of the relevant contractual provisions, the Court finds none which tend to excuse Lacote's nonperformance for reasons within its control or at its discretion.   The sole excepted delays are those that are caused by events cognizable as a defense to performance under Mississippi contract law.   The HUD Guidelines allow such exceptions to the completion obligation.   Furthermore, the Purchase Agreements do not limit the kind of damages Plaintiffs could recover.   It is not necessary for the Agreements to include a provision regarding specific performance in order for that remedy to be available to the Plaintiffs.   *See* Suppl. Info. to Part 1710: Guidelines for Exemptions Available Under the ILSFDA, *available at* www.hud.gov/offices/hsg/ramh/ils/ilsexemp.cfm; *Maguire*, 591 F. Supp. 2d at 1269.

Plaintiffs argue that their right to seek specific performance is impacted by the "Down Payment" provision regarding refund of their deposit money in the event of non-

completion.  It is not clear how these separate remedies would impact one another.  A buyer could pursue specific performance, in which case he would have no right to a refund of his deposit.  Or a buyer could seek a deposit refund from the seller, in which case he would have no right to specific performance.  The provision requiring the Plaintiffs to give up their interest in the project in order to obtain a refund is compatible with the separate remedy of specific performance and does not render the completion obligation illusory.

Finally, the Purchase Agreement provides that if Plaintiffs' deposit money has been used for construction of the project, then Plaintiffs' claim to a return of the money is subordinate to any mortgage lien.  In that event, it "shall be the full responsibility of the SELLER to make the appropriate refund."  Compl. Ex. "A" 8 (¶ 14b).  Plaintiffs' remedy of return of their deposits is not waived or foreclosed by this provision.  *See Barry v. Midtown Miami No. 4, LLC*, 651 F. Supp. 2d 1320, 1327 (S.D. Fla. 2008).

CONCLUSION

The Court must interpret a contract as written.  Here, the purchase agreement included remedies in case of a default.  Events and  circumstances in this case - particularly the foreclosure and bankruptcy - transpired  in such a manner that Plaintiffs ultimately did not have a *practical* cure to recover their purchase deposit.  But these subsequent occurrences do not render the original purchase contract illusory.  The Court also finds that the Purchase Agreements imposed a legal duty on Lacote to complete construction within two years.  Therefore, pursuant to 15 U.S.C. § 1702(a)(2), the transaction is exempted from the provisions of the ILSFDA.  Accordingly, summary

judgment will be granted in favor of Defendants Emerson P. Loga, III and Dennis Stieffel.

The remaining Defendant, Douglas R. Johnson, has never been served with process.  Plaintiffs have informed the Court they have exhausted efforts to locate Johnson and agree that the claims against Johnson may be dismissed without prejudice.  *See* Pl. Resp. to Court's Show Cause Order, Nov. 22, 2011, ECF No. 87.

**IT IS THEREFORE ORDERED AND ADJUDGED** the Motion for Summary Judgment [78] filed by Defendants Emerson P. Loga, III and Dennis Stieffel pursuant to Fed. R. Civ. P. 56, is **GRANTED**.  Plaintiffs' claims against these Defendants are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiffs' claims against Douglas R. Johnson are **DISMISSED** without prejudice.

**SO ORDERED AND ADJUDGED** this the 23rd day of November, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

-11-